# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHARLES STINSON III,**

      **Plaintiff,**       **Case No. 24-2469-DDC**

**v.**

**AMAZON.COM SERVICES, LLC,**

      **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Charles Stinson III has nerve damage in his foot and it prevents him from standing or walking for extended periods of time. He notified his employer, defendant Amazon.com Services, LLC, of this restriction and requested permission to use a scooter while working at defendant's delivery station. Defendant initially agreed to honor this request, albeit on a temporary basis, and plaintiff worked successfully. Plaintiff then submitted a doctor's note indicating that his disability was permanent. Defendant, zeroing in on a part of the doctor's note that said plaintiff couldn't stand for more than an hour, concluded that plaintiff wasn't qualified for his position. Defendant thus reduced his hours and then later fired him. Plaintiff then filed this suit, asserting that defendant had violated the Americans with Disabilities Act (ADA)[1] by failing to accommodate, discriminating, and retaliating.

---

[1]   The ADA Amendments Act of 2008 ("ADAAA") amended the ADA and "went into effect on January 1, 2009." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017). Here, the "events that form the basis for [plaintiff's] disability-related claims occurred after this [effective] date; therefore, the ADAAA is technically applicable here." *Id.* The "ADAAA primarily effected revisions to the ADA's definition of 'disability.'" *Id.* Because plaintiff's disability status isn't relevant to any issue decided here, the court "freely rel[ies] on authorities [existing] prior to ADAAA's effective date that apply and construe the ADA, insofar as they are relevant." *Id.* For simplicity, the court refers to this

Before the court is defendant's Motion for Summary Judgment (Doc. 32). The court largely denies it. Based on this record, a rational trier of fact could conclude that plaintiff, notwithstanding the doctor's note, was qualified for his position and that defendant unlawfully terminated him instead of accommodating him. The court explains this result, below, starting with the pertinent factual background and the governing legal standard.

## I.    Background

The following facts either are uncontroverted or, if controverted, are stated in the light most favorable to plaintiff—the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Defendant employed plaintiff as a warehouse associate. Doc. 33-6 at 3 (Pl. Dep. Ex. 4). Within this role, plaintiff worked as a diverter. Doc. 38-3 at 19 (Blake Dep. 74:19–75:8); Doc. 38-1 at 11 (Pl. Dep. 41:18–20). Diverters are responsible for pushing boxes onto conveyor belts. Doc. 38-1 at 12 (Pl. Dep. 42:7–16). In a given shift, after completing his diverting duties, plaintiff sorted boxes until the end of his shift. *See id.* at 21 (Pl. Dep. 79:8–17).

Plaintiff is disabled. He has nerve damage in his right calf and foot. Doc. 33-1 at 8 (Pl. Dep. 20:7–21:8). Defendant knew about plaintiff's disability. Doc. 38-2 at 13 (Shah Dep. 47:6–8); Doc. 38-4 at 15 (Landers Dep. 56:3). For the first few months of his tenure—from December 2022 through April 2023—plaintiff worked without any formal accommodation in place. Doc. 33-4 at 18 (Landers Dep. 60:6–19). Plaintiff used a scooter to enter the building and to get to his workstation. Doc. 38-1 at 20 (Pl. Dep. 76:3–7). The scooter was a simple device, enabling plaintiff to rest his right knee. *Id.* (Pl. Dep. 75:14–25). Plaintiff also used his scooter when he took breaks. But he otherwise didn't use his scooter or sit while performing his diverting duties. Doc. 33-1 at 22 (Pl. Dep. 76:8–18).

---

governing law as the ADA. *See Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 795 (10th Cir. 2025) (referring to the governing law as the "ADA," not the "ADAAA").

Shortly after plaintiff began his tenure, defendant directed him to seek a formal accommodation to use his scooter at work.  *See* Doc. 38-4 at 8, 9 (Landers Dep. 26:9–19, 29:15–24).  To that end, defendant asked plaintiff to provide a doctor's note documenting his disability and requested accommodations.  *See* Doc. 38-1 at 20 (Pl. Dep. 74:23–75:1).  Plaintiff complied, submitting a doctor's note and a formal accommodation request.  Doc. 38-5 at 7 (Landers Dep. 24:2–25:3); Doc. 38-10 at 2 (Pl. Ex. 10); Doc. 31 at 2 (PTO ¶ 2.a.v.).  Here's the doctor's note plaintiff provided:

> Date: 12/19/22
>
> To whom it may concern:
>
> Mr. Charles Stinson is currently been treated at Spinal Rehabilitation Center. Due to the nerve damage in his foot, please refer to the following restrictions:
>
> - No standing or walking for an extended period of time
>
> Mr. Stinson may require the use of a scooter or mechanism that supports his duties. If you have any questions please contact me at my office at 913-308-0404.
>
> Thank you,
>
> *Thayer Banwart*
> Thayer Banwart, D.C.

Doc. 38-10 at 2 (Pl. Ex. 10).  Defendant then requested additional information from plaintiff about how long he could stand and walk.  Doc. 33-8 at 2–3 (Landers Decl. ¶ 4).

Plaintiff eventually submitted a new accommodation request.  Doc. 38-13 (Pl. Ex. 13).  Plaintiff identified his requested accommodation as "the mobile scooter."  *Id.* at 1.  This submission included a form that plaintiff's doctor completed.  *Id.* at 3–6.  Relevant here, the form provided that plaintiff couldn't stand for more than an hour.  *Id.* at 4.  But plaintiff's doctor suggested that accommodations—occasional breaks and use of a scooter—would ameliorate this

3

restriction. *Id.* at 4, 5, 6. Defendant approved this accommodation request on a temporary basis. Doc. 38-14 at 1–2 (Pl. Ex. 14). And plaintiff performed well under it; defendant recognized plaintiff as one of its "top performers" multiple times. Doc. 38-8 (Pl. Ex. 8); Doc. 38-1 at 22 (Pl. Dep. 84:11–24). Plaintiff's manager agreed that plaintiff "perform[ed] his job safely and effectively[.]" Doc. 38-3 at 26 (Blake Dep. 104:13–16).[2]

After receiving an email that his accommodation was set to expire, plaintiff informed defendant that he wanted to continue the accommodation because his "injury isn't changing." Doc. 38-15 at 1 (Pl. Ex. 15). Defendant told plaintiff that it needed "updated documents from [his] health care provider" that listed the type and duration of plaintiff's restrictions. *Id.* Plaintiff's medical provider then faxed an updated form to defendant. Doc. 38-12 (Pl. Ex. 12). This fax included a message inviting defendant to follow up if it had any questions or concerns. *Id.* at 1. This updated form was identical to the one that plaintiff's doctor previously had submitted, with one exception: it listed the end date of plaintiff's restrictions as "indefinitely" instead of "TBD." *Compare id.* at 3–6, *with* Doc. 38-13 at 3–6 (Pl. Ex. 13); *see also* Doc. 38-16 at 9 (Pl. Ex. 16) (acknowledging that the new accommodation request is "the same however it's now permanent").

Defendant denied plaintiff's renewed accommodation request. Doc. 38-16 at 1 (Pl. Ex. 16). It interpreted the doctor's note as a statement limiting plaintiff to working three hours per

---

[2]    Again, the record isn't altogether clear on the question whether the characterizations of plaintiff as an effective employee referred to the time before or after defendant had formalized his accommodation. But the record doesn't suggest that plaintiff's job duties changed significantly (or at all) after defendant approved the accommodation. Regardless, there's no evidence in the summary-judgment record that plaintiff's disability or accommodations ever interfered with his performance in any meaningful way. So, viewing the evidence in the light most favorable to plaintiff, the court assumes plaintiff continued to perform well with these accommodations formally in place.

day. *Id.*[3] And based on this interpretation, defendant concluded that it couldn't accommodate plaintiff's disability. *Id.* The manager of the delivery station where plaintiff worked acknowledged that plaintiff stands for seven hours a day, and he opined that the "paper restrictions [don't] match what he does on the floor[.]" *Id.* Defendant offered plaintiff an opportunity to renew his accommodations but limit him to three working hours. Doc. 33-6 at 41 (Pl. Dep. Ex. 29). Plaintiff declined. Doc. 33-8 at 3 (Landers Decl. ¶ 9). Defendant reached out to six sister sites to see if any of them could accommodate plaintiff. None could. *Id.* at 10 (Landers Decl. ¶ 10). Defendant subsequently terminated plaintiff. Doc. 31 at 2 (PTO ¶ 2.a.ix.).

Plaintiff asserts three claims under the ADA: discrimination; failure to accommodate; and retaliation. *Id.* at 11–12 (PTO ¶ 4.a.).

## II.      Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

---

[3]      The form plaintiff's doctor completed never articulates the three-hour-per-day restriction defendant attributes to it. *See generally* Doc. 38-12 (Pl. Ex. 12). To the contrary, it expressly clears plaintiff to work eight hours a day. *Id.* at 3. Defendant explains that it calculated three hours like this: "Look at the restrictions, how many hours they have. Say if you look at they have one hour for standing, based twice, and one hour of walking, so two hour total and then giving one extra hour plus or minus." Doc. 33-5 at 25 (Shah Dep. 88:18–22); *see also* Doc. 38-16 at 1 (Pl. Ex. 16) ("If you look at the restriction he can only walk for an hour and stand for an hour that's about it").

5

477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."  *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.    Analysis

The heart of the parties' dispute is whether plaintiff was qualified for the position he held after his doctor had submitted a note that limited him to standing for no more than one hour. As the court explains below, a rational factfinder could conclude that plaintiff was qualified despite the doctor's note. The court starts with plaintiff's failure-to-accommodate claim, explaining its conclusion that plaintiff has raised a triable issue whether he was qualified. Then, the court tackles plaintiff's discrimination and retaliation claims.

### A.    Failure to Accommodate

Start with plaintiff's failure-to-accommodate claim. "The definition of disability discrimination in federal law includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1191 (10th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a prima facie failure-to-accommodate claim, plaintiff "must show: (1) he is disabled; (2) he is otherwise qualified for the job; and (3) he requested a plausibly or facially reasonable accommodation." *Id.* "If a plaintiff makes a prima facie case, the burden shifts to the defendant to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense." *Hermann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021) (quotation cleaned up).

7

Defendant's sole argument here is that plaintiff isn't qualified.  Doc. 33 at 12–13.  The court focuses its inquiry there.  *See Hampton*, 87 F.4th at 1191 (considering only the contested element of plaintiff's prima facie failure-to-accommodate claim).  A "qualified individual . . . is someone 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires.'"  *Stanley v. City of Sanford*, 606 U.S. 46, 52 (2025) (quoting 42 U.S.C. § 12111(8)).  Our Circuit has two criteria for this inquiry—"(1) whether the plaintiff's impairment prevented him from performing the essential functions of his job, and (2) if so, whether he might have nevertheless been able to perform those functions if the employer provided him a reasonable accommodation."  *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883–84 (10th Cir. 2015) (quotation cleaned up).

The crux of defendant's position is that the note plaintiff provided from his doctor disqualified him.  Recall that the doctor's note limited plaintiff to standing for 30 minutes to an hour at a time.  *See* Doc. 38-12 at 3 (Pl. Ex. 12).  From this restriction, defendant concludes that, since plaintiff's job required standing for periods greater than two hours, plaintiff wasn't qualified.  Defendant's position has some appeal.  After all, employers needn't trust an employee's subjective assertion of his capabilities over a contradicting doctor's orders.  *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1195 n.19 (10th Cir. 2018) (explaining that defendant "was not in a position to rely on [plaintiffs'] personal, untrained statements about their capabilities to work outdoors when the only statements on file from [plaintiffs'] medical professionals stated [plaintiffs] could not work outdoors"); *see also O'Malley v. Calumet GP, LLC*, No. 13-CV-60-JED-PJC, 2014 WL 3501540, at *4 (N.D. Okla. July 14, 2014) (compiling cases) ("It is well established that, in determining whether an employee is qualified to perform

8

the essential functions of his job, an employer is entitled to rely on medical determinations made by physicians."). But here, defendant tries to stretch this principle too far.

A doctor's note isn't a summary-judgment trump card. To the contrary, a plaintiff can generate a genuine issue about his qualifications by adducing "substantial objective evidence" contradicting a doctor's recommendation. *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 942 (8th Cir. 2018) (en banc) ("We acknowledge that substantial objective evidence that conflicts with a physician's statement may create a genuine issue of material fact whether the employee is qualified to perform a particular job."); *Holiday v. City of Chattanooga*, 206 F.3d 637, 644–45 (6th Cir. 2000) (finding genuine issue of material fact where doctor's recommendation was "at odds with the objective evidence on record"). Here, for two reasons a reasonable jury could conclude that plaintiff could perform the essential function of his job notwithstanding his doctor's note.

*First*, the doctor's note suggested that plaintiff could perform his job with reasonable accommodations. Recall that the doctor's note is the only evidence that defendant has adduced that plaintiff wasn't qualified. And to defendant's credit, the doctor's note says that plaintiff shouldn't stand for more than 30 minutes to an hour. Doc. 38-12 at 3 (Pl. Ex. 12). But the exact same note suggests reasonable accommodations capable of ameliorating this issue. *Id.* at 3–4. It suggests that short breaks and occasional use of his scooter would enable plaintiff to perform "job tasks that required extended periods of standing and walking." *Id.* At its own peril, defendant ignored these portions of the doctor's note.[4] The accommodations suggested in the

---

[4] In fairness to defendant, the doctor's note isn't altogether clear about the scope of plaintiff's restrictions. For instance, it restricts standing to an hour while simultaneously suggesting that plaintiff might "be[] on [his] feet for more than two hours[.]" Doc. 38-12 at 3 (Pl. Ex. 12). But the doctor's note contains a clear remedy: allow plaintiff to use his scooter. *Id.* at 4, 6. And, regardless, a jury could conclude that an ambiguous communication from a doctor doesn't render plaintiff unqualified.

doctor's note furnish a sufficient basis for a jury to find that a reasonable accommodation existed and that plaintiff thus was qualified for his position.  So, viewed in the light most favorable to plaintiff, the doctor's note supports plaintiff's position that he could do his job with reasonable accommodations in place.[5]

*Second*, plaintiff already had worked—successfully—with the same accommodations he was requesting.  Recall that plaintiff had submitted a doctor's note nearly identical to the one that defendant used to justify terminating him.  Doc. 38-13 at 3–6 (Pl. Ex. 13).  The only difference: the original note listed the end date of plaintiff's impairments as "TBD."  *Compare id.* at 3–4, *with* Doc. 38-12 at 3 (Pl. Ex. 12).  Defendant accepted and implemented these proposed limitations and accommodations.  Doc. 38-14 at 2 (Pl. Ex. 14).  And there's no question that plaintiff worked successfully both with these accommodations and before these accommodations were formally in place.  In fact, defendant listed him as one of its "top performers" more than once.  Doc. 38-8 (Pl. Ex. 8).  Defendant has no evidence that any circumstances changed between plaintiff's original, accepted accommodation request and his later, rejected accommodation request.  So, a jury could find that plaintiff's successful performance proves he could do the job—*viz.*, he was qualified.

Defendant tries to wave this argument aside, retreating yet again to the doctor's note. Doc. 44 at 14.  But plaintiff's successful performance was "at odds" with the (self-contradictory) doctor's note.  *Holiday*, 206 F.3d at 645.  In other words, plaintiff has adduced "substantial

---

[5]    Admittedly, plaintiff's briefing describing his scooter accommodation isn't entirely consistent with the doctor's note.  For instance, in his brief, plaintiff insists that he only wanted to use his scooter for five minutes per shift.  Doc. 38 at 14; *id.* at 34 (emphasizing plaintiff's "narrow request . . . to bring his scooter to work").  The doctor's note, in contrast, arguably envisions more frequent uses throughout the day.  This briefing inconsistency isn't fatal to plaintiff's position.  That's so because viewed in the light most favorable to plaintiff, the doctor's note—the only summary-judgment evidence defendant offers that plaintiff isn't qualified—suggests that plaintiff, in fact, was qualified.

objective evidence" that he was qualified for the position. *Faidley*, 889 F.3d at 942. That evidence is sufficient to submit the issue to a jury. *See id.* ("We acknowledge that substantial objective evidence that conflicts with a physician's statement may create a genuine issue of material fact whether the employee is qualified to perform a particular job.").[6]

In short, a reasonable jury could find that plaintiff was qualified to perform the essential functions of his job with reasonable accommodation. Plaintiff thus has raised a triable issue whether he was qualified. Because that is the sole summary-judgment argument that defendant has advanced against plaintiff's failure-to-accommodate claim, the court denies summary judgment against it.[7]

---

[6]    Defendant emphasizes that plaintiff's performance of his job duties didn't match the recorded accommodations. Doc. 44 at 14; *see also* Doc. 38-16 at 1 (Pl. Ex. 16) (internal message where defendant's employee explained that plaintiff's "paper restrictions" don't "match what he does on the floor"). This point isn't the slam dunk defendant hopes it is. Whether plaintiff was working within the confines of his doctor's recommendations, or not, that plaintiff was working successfully in his job as a "top performer" furnishes sufficient evidence for a reasonable jury to conclude that he was qualified for the position. *See Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 593–94 (5th Cir. 2016) (explaining that—notwithstanding a doctor's note restricting his arm movement—plaintiff's demonstration that he could climb a ladder and a separate doctor's note clearing him to climb a ladder provided "some evidence that supports a finding that [plaintiff] could perform this function" such that summary judgment was improper).

[7]    Plaintiff also argues that defendant didn't engage the interactive process. Doc. 38 at 38–39. But plaintiff never explains why this matters. Our Circuit "require[s] an employer and employee to engage in . . . 'the interactive process' to determine an appropriate" accommodation. *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1193 (10th Cir. 2022) (quoting *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004)). When an employee provides "notice to the employer of his disability and any resulting limitations[,]" it "triggers the employer's responsibility to engage in the interactive process where both parties must communicate in good-faith." *Id.* Here, everyone agrees, plaintiff requested an accommodation. But, a "failure to engage in the interactive process is not a standalone claim." *Id.* at 1194 n.2. That is, even when an employer fails to engage in the interactive process, the employee still must "establish that there was, in fact, a reasonable accommodation that would have enabled [him] to perform the essential functions of [his] job[.]" *Aubrey v. Koppes*, 975 F.3d 995, 1009–10 (10th Cir. 2020). Defendant's entire argument contends that plaintiff wasn't qualified—*i.e.*, that plaintiff couldn't perform the job even with reasonable accommodation. The interactive process isn't relevant to that inquiry. The dispositive issue here is whether a reasonable accommodation was possible. *See Freeman v. City of Cheyenne*, No. 23-8022, 2024 WL 464069, at *3 (10th Cir. Feb. 7, 2024) (compiling Circuit authority and explaining that "even if an employer does not engage in the interactive process, a plaintiff cannot survive summary judgment unless she can *also* show that a reasonable accommodation was possible" (emphasis in original) (quotation cleaned up)). The court thus ignores plaintiff's red herring.

### B.    Disability Discrimination

The court denies defendant's request for summary judgment against plaintiff's ADA discrimination claim.  A prima facie ADA discrimination claim requires plaintiff to show that (1) he was disabled; (2) he "was qualified, with or without reasonable accommodation, to perform" his job's essential functions; and (3) he was fired because of his disability.  *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021).[8]  Defendant's sole argument against plaintiff's discrimination claim surviving contends that plaintiff wasn't qualified for it—*i.e.*, plaintiff "was unable to perform the . . . job, which required him . . . to stand for seven hours a day."  Doc. 33 at 16; Doc. 44 at 13–14.[9]  The court already has rejected this argument.  Though a factfinder might conclude that defendant is right, a reasonable factfinder also could conclude that plaintiff, as demonstrated by months of successful performance, was qualified.  The court thus declines to enter summary judgment against this claim.

---

[8]    Committing to the *McDonnell Douglas* framework, defendant argues that firing plaintiff because he could only work three hours per day is a legitimate, non-discriminatory reason for plaintiff's termination.  Doc. 33 at 16.  And, even if defendant was wrong about plaintiff's limitations, this good-faith belief in its reason for firing plaintiff can't show pretext.  *Id.*  The problem with this argument is defendant's full-throated commitment to *McDonnell Douglas*.  A reasonable factfinder could find direct evidence of discrimination here.  Defendant fired plaintiff because of the limitations caused by his disability.  From this, a reasonable factfinder could find direct evidence of disability discrimination, making *McDonnell Douglas* inapplicable.  *See Trinidad v. Agiliti Health, Inc.*, No. 19-2683-DDC, 2022 WL 343678, at * (D. Kan. Feb. 4, 2022) (concluding reasonable factfinder could find direct evidence of disability discrimination where employer refused to reassign plaintiff because of worry about plaintiff's ability to handle job's physical requirements).

[9]    Defendant makes some other arguments about the relevant adverse employment action.  It argues, for instance, that any harassment plaintiff complained of didn't rise to such a level that it altered the terms or conditions of his employment.  Doc. 33 at 15.  And defendant argues also that a few disciplinary incidents didn't alter the terms or conditions of his employment either.  *Id.*  Plaintiff doesn't argue otherwise so, as explained further below, *see below* note 10, those actions can't support a disability-discrimination claim.  But the claim based on defendant firing plaintiff—an obvious adverse employment action—survives.

12

### C.      Retaliation

Plaintiff also asserts a claim for retaliation.  Defendant initially asked the court to grant summary judgment against this claim in its opening brief.  After plaintiff responded, defendant wholly abandoned its argument in its reply brief.  *See generally* Doc. 44.  The court thus considers its argument on this front abandoned.  *See BD Med. Supplies LLC v. Bluestem Mgmt. Advisors, LLC*, 685 F. Supp. 3d 1062, 1070 n.4 (D. Kan. 2023) ("Based on defendants' failure to address this argument in the Reply, the court can consider it abandoned."); *see also In re FCC 11-161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting petitioners' argument because their reply brief was silent on an issue and made no attempt to rebut the respondents' argument).  Based on this briefing abdication, the court denies defendant's request for summary judgment against plaintiff's ADA retaliation claim.

### IV.      Conclusion

The court denies defendant's request for summary judgment against plaintiff's failure-to-accommodate claim.  Plaintiff successfully worked in the position for several months, which permits a rational factfinder to conclude that he was qualified for the job, notwithstanding a doctor's note suggesting that he couldn't perform some of the job's duties.  Defendant's attack on plaintiff's discrimination claim fails for the same reason.  Finally, defendant has abandoned its request for summary judgment against plaintiff's retaliation claim, so the court denies that portion of its motion, too.[10]

---

[10]      The court narrowly grants a portion of defendant's Motion for Summary Judgment (Doc. 32). This footnote explains that narrow result.  In the Pretrial Order, plaintiff suggested that defendant discriminated against him by "reducing his hours, disciplining him[,] and depriving him of other benefits" in addition to terminating him.  Doc. 31 at 11 (PTO ¶ 4.a.i.).  Plaintiff has abandoned these alternative theories by failing to respond to defendant's opening-brief arguments that these actions aren't adverse employment actions.  Thus, the court grants summary judgment against any theory of plaintiff's discrimination claim based on adverse actions other than his termination

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 32) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 24th day of June, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

A similar issue inheres in plaintiff's retaliation claim. The Pretrial Order includes a laundry list of purportedly retaliatory measures defendant took against plaintiff: "harassing him, repeatedly demanding unrelated and irrelevant health information, issuing written reprimands, reducing his work hours, concocting arbitrary restrictions, including a fabricated 3-hour restriction, denying an accommodation, refusing to find an alternate job and terminating him." *Id.* at 12 (PTO ¶ 4.a.iii.). Defendant argued that only termination can qualify as a materially adverse employment action, Doc. 33 at 18–19, and in response plaintiff argued merely that reducing hours and terminating him qualify as materially adverse, Doc. 38 at 39–40. Plaintiff thus has abandoned his other theories, and the court grants summary judgment against them.